UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| *In Re:* | : | Bankruptcy Court No. 03-15217 |
| | : | (Chapter 11) |
| CORPORATE MEDIA GROUP, INC., | : | *Judge Cook* |
| | : | |
| *Debtor*. | : | |

| | | |
|---|---|---|
| RICHARD and SUSAN DURAND, | : | |
| | : | |
| *Plaintiffs*, | : | |
| v. | : | No. 1:04-mc-04 |
| | : | *Judge Edgar* |
| CORPORATE MEDIA GROUP, INC. | : | |
| and AMERICANA PUBLISHING, INC., | : | |
| | : | |
| *Defendants*. | : | |

# M EMORANDUM

## I. Introduction

Currently pending before the Court is the motion of Defendant Americana Publishing, Inc., ("Americana") to vacate default and set aside default judgment [Court File No. 7]. Plaintiffs Richard and Susan Durand ("the Durands") have filed a response to Americana's motion to vacate [Court File No. 9].

Consequently, Americana's motion to vacate default and set aside default judgment is now ripe for review.

## II. Background

The Durands filed this action on October 7, 2003, in the United States Bankruptcy Court for the Eastern District of Tennessee pursuant to 11 U.S.C. § 541(c)(1) and Fed. R. Bankr. P. 7003. The Durands sought a declaratory judgment that Corporate Media Group ("CMG") was an

alter ego of Americana and the Durands asserted causes of action for damages against Americana for depletion of corporate assets by alter ego, fraudulent control of corporate assets by alter ego, fraud and breach of contract.

A copy of the summons and complaint was sent to Americana on October 7, 2003, and received by Americana on October 23, 2003. Subsequently, Americana failed to file an answer or otherwise file a responsive pleading. On December 9, 2003, after the time for a responsive pleading had passed, the Durands' counsel spoke with counsel for Americana, who requested an extension of time until December 12, 2003, in which to file a responsive pleading.

No responsive pleading having been filed, the Durands moved for an entry of default and a judgment by default on January 5, 2004. A default was entered by the Bankruptcy Court on January 9, 2004, and a Notice of Hearing with respect to plaintiff's motion for entry of a judgment of default was issued and served by the Bankruptcy Court on all parties, including Americana. The notice of hearing set the hearing for a default judgment on January 29, 2004.

Americana did not respond to the notice of hearing. Specifically, it did not advise the Court or other counsel that it had allegedly mailed responsive pleadings to the Court on January 8, 2004.

Further, despite Americana's assertion that it mailed responsive pleadings on January 8, 2004, Americana did not appear at the January 29, 2004 damages hearing in the Bankruptcy Court. At the damages hearing, the Bankruptcy Court raised the issue of whether it had subject matter jurisdiction over the proceedings and it requested that the Durands brief that issue in support of their motion for a default judgment.

Thereafter, on February 5, 2004, the Durands filed a memorandum of law in support of their motion for a judgment by default. Despite the fact that a copy of the memorandum was served on Americana, Americana did not respond to the memorandum.

On February 12, 2004, the hearing for the default judgment was held in the Bankruptcy Court. Again, Americana did not appear at this hearing. At this hearing, the Bankruptcy Court determined that the Durands' causes of action were not within its core jurisdiction, however, most of the Durands' causes of action were within its subject matter jurisdiction as "related to a case under Title 11" pursuant to 28 U.S.C. § 157(a).

On February 13, 2004, the Bankruptcy Court submitted its Proposed Findings of Fact and Conclusions of Law to this Court; and, it served copies of the Proposed Findings of Fact and Conclusions of Law on all the parties, including Americana. Americana filed no objections or other response to the Proposed Findings of Fact and Conclusions of Law.

The Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law state in relevant part:

> 4. Count II alleges that Americana so depleted the assets of [CMG] that it could not make its rental payments to the [Durands], who have thus been damaged in the sum of $1,264,620.70. If Americana is indeed the alter ego of [CMG] as alleged, and if the Plaintiffs can recover against Americana, then any such recovery would reduce the claim in bankruptcy against [CMG]. Because this could affect [CMG's] bankruptcy estate, this count is "related to a case under title 11," as that phrase had been defined in *Robinson v. Michigan Consolidated Gas Co.*, 918 F.2d 579, 583 (6th Cir. 1990)(adopting the test in *In re Pacor, Inc.*, 743 F.2d 984, 994 (3rd Cir. 1984)). Also, it appears that the plaintiff's have standing to bring this cause of action based upon an allegation that Americana was the alter ego of [CMG] and that through its complete control of [CMG], Americana committed a wrong or unjust act by wrongfully depleting [CMG's] assets so that [CMG] was unable to make its rental payments to the Plaintiffs. *See generally Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS*

> *Engineered Prods. Co.)*, 102 F.3d 223 (6th Cir. 1996); *IBC Manufacturing Co. v. Velsicol Chemical Corp.*, 187 F.3d 635, 1999 WL 486615 (6th Cir. July 1, 1999).
>
> . . .
>
> 7. Count V of the complaint alleges mere breach of contract by Americana to reimburse [the Durands] for loans and expenses they allegedly incurred on behalf of [CMG]. The bankruptcy court has no jurisdiction over this claim because it does not appear to be related to the bankruptcy case. The district court, however, may have jurisdiction over this claim by virtue of the supplemental jurisdiction granted by 28 U.S.C. § 1367. Because the claim arises out of the common nucleus of operative fact surrounding the purchase of [CMG] by Americana, the district court may wish to exercise supplemental jurisdiction over it.
>
> . . .
>
> Based on these findings of fact and conclusions of law, the bankruptcy court recommends that the district court grant a default judgment to the [Durands] on Count II of the complaint but not on Counts I, III, and IV. Whether a default judgment is entered on Count V will depend on whether the district court decides to exercise supplemental jurisdiction over this court pursuant to 28 U.S.C. § 1367.

[Court File No. 2].

Thereafter, on March 22, 2004, the Durands submitted their Objections to the Proposed Findings of Fact and Conclusions of Law of the Bankruptcy Court. [Court File No. 6] Americana filed no response.

On May 14, 2004, Americana filed its motion to vacate default and set aside default judgment [Court File No. 7]. The Durands filed their response to Americana's motion to vacate on May 27, 2004 [Court File No. 9].

## III. Americana's Motion to Vacate Default and Set Aside Default Judgment [Court File No. 7].

Americana moves to set aside the default judgment and vacate the proposed default judgment set forth in the bankruptcy court's proposed Findings of Fact and Conclusions of Law [Court File No. 9]. In its motion, Americana sets forth the following grounds for vacating the default judgment/proposed default judgment:

> 1. Americana . . . received notice of [the Durand's] Notice of Request for Entry of Default Judgment.
>
> 2. Prior to receiving said notice, settlement negotiations had been initiated with counsel for [the Durands], as a result of the holiday period, negotiations for settlement were delayed along with other matters related to the case.
>
> 3. Upon receipt of [the Durand's] Notice of Application for default judgment, the undersigned simultaneously prepared a "Motion for Mandatory Abstention or Alternative for the Exercise of the Court's Discretion to Abstain" and, in the alternative an "Answer" to the Complaint. True and correct copies of the Motion and Answer are attached hereto by reference as Exhibit "A" (MOTION) and Exhibit "B" (ANSWER).
>
> 4. The Motion filed by defendant was to assert the absence of jurisdictional appropriateness for this Court, relating to the plaintiff's claims, as the claims do not comprise "core" matters of the underlying bankruptcy of a third-party. As an alternative, the defendants tendered Answer was to show the existence of meritorious defenses, including the assertion for fraud and breach counterclaims against the plaintiffs.
>
> 5. Both pleadings referred to in the paragraph above were prepared, signed, packaged and mailed by being placed in the designated spot for pick up and delivery by the US Postal Service appropriately addressed to the Court and to opposing counsel on January 8, 2004 . . . These appropriate pleadings and actions were executed prior to receipt of the Court's Notice of hearing for default judgment entered January 9, 2004, and significantly prior to the hearing scheduled for January 29, 2004.

> 6. Defendant's counsel of record incorrectly, through no fault or action of the Defendant individually, Americana Publishing, Inc., assumed the Motion, and in the alternative, answer of the Defendant would or had voided the need for and scheduling of a default hearing.
>
> 7. Thereafter, Notice of Default was received by Defendant and subsequently receipt of the Court's Proposed findings of Fact and Conclusions of law to be submitted to the District Court.
>
> 8. Counsel for Defendant, Americana Publishing, Inc., would show that Americana's failure to answer was not willful, but a result of mistake and excusable neglect. Further, there exists a meritorious defense, in addition to the jurisdictional issues. Further, good faith on the part of defendant exists, combined with the reasonable and permissible timing of this motion under both Rules 55(c) and 60(b) . . .

[Court File No. 9, pp. 2-3]. Americana further asserts that vacating the default judgment would not prejudice the rights of the Durands as there exists only proposed findings of fact and conclusions of law on the part of the bankruptcy court, not an actionable final judgment upon which either party has relied on to its detriment. *Id.*

The Sixth Circuit has adopted the general principal that trials on the merits are favored in federal courts, and any doubts should be resolved in favor of setting aside default judgments. *Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 795 (6th Cir.), *cert. denied,* 537 U.S. 883 (2002); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); *United Coin Meter v. Seaboard Coastline R. R.,* 705 F.2d 839, 846 (6th Cir. 1983). Fed. R. Civ. P. 55(c) provides that for good cause shown the Court may set aside a default judgment in accordance with Fed. R. Civ. P. 60(b). Rule 60(b)(1) provides that on motion and upon such terms as are just, the Court may relieve a party from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect.

"Judgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter*, 705 F.2d at 845; *see also Weiss*, 283 F.3d at 795; *Amernational Indus. v. Action-Tunsgram, Inc.*, 925 F.2d 970, 976 (6th Cir. 1991). Rule 60(b)(1) is applied equitably and liberally to achieve substantial justice. *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Weiss*, 283 F.3d at 795; *Amernational*, 925 F.2d at 976; *United Coin Meter*, 705 F.2d at 844-45. Where a party's default results from an honest mistake rather than willful misconduct, carelessness or negligence, there is an especial need to apply Rule 60(b)(1) liberally. *Id.* at 844; *see also Weiss*, 283 F.3d at 795.

The courts must distinguish between an entry of default and a default judgment as the "burden for setting aside a default judgment is greater than for setting aside an entry of default." *United States v. Real Property, All Furnishings Known as Bridwell's Grocery*, 195 F.3d 819, 820 (6th Cir. 1999). Once a default entry has ripened into a default judgment, a stricter standard of review will apply for setting aside the default. *Id.*

In *Waifersong Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1999), the Sixth Circuit described the different standards between an entry of default and a default judgment as follows:

> When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief. But when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry. When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when an court initially proceeds . . . under Rule 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a default judgment unless [it] can

> demonstrate that [its] default was the produce of mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant can carry this burden that he will be permitted to demonstrate that he can also satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

*Id.* at 292.

However, under the "'good cause shown' standard" of Fed. R. Civ. P. 55(c), a district court "enjoys considerable latitude" to grant a defendant relief from a default entry." *Id.* (citing *Waifersong*, 976 F.2d at 292 ). The exercise of discretion necessary to set aside a default judgment entails " consideration of three factors: (1) whether the plaintiff would be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the culpable conduct of the defendant led to the default." *Id.* Further, the Sixth Circuit has found that a when two of the three factors set forth above are satisfied; namely, that a defendant had a meritorious defense and no prejudice would result to the plaintiff if the matter would go forward, a district court abuses its discretion when it denies a motion to set aside a default. *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.2d 345, 355 (6th Cir. 2003).

In this instance, the Court finds that it is only dealing with the bankruptcy court's entry of default, not a default that has "ripened" into a default judgment. Thus, the stricter standard which applies for setting aside a default judgment does not apply and this Court enjoys considerable latitude in setting aside the default under the "good cause shown" standard of Fed. R. Civ. P. 55(c). *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

Turning to the three factors necessary for setting aside the entry of a default, the Court finds that the Durands would not be prejudiced by the setting aside of the bankruptcy court's entry of default. First, as previously stated, this is not the case where this Court would be setting aside a "ripened" default judgment. Rather, in its Proposed Findings of Fact and Conclusions of

Law, the Bankruptcy Court has recommended that this Court grant a default judgment to the Durands on Count II and, possibly Count V, of their complaint, but not on Counts I, III and IV. [Court File No. 2].

Should this Court deny the Bankruptcy Court's recommendation that it enter a default judgment in favor of the Durands on Count II, and possibly Count V, of their Complaint, in the event the Durands ultimately prevail on the claims set forth in those counts of their Complaint, they will experience some delay in receiving satisfaction from the defendants as to those claims.[1] However, a mere delay in the satisfaction of a plaintiff's claims, in the event it succeeds at trial, "is not sufficient prejudice to require denial of a motion to set aside a default . . ." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).

With regard to the second factor, Americana asserts that it does have meritorious defense which would be precluded by the entry of a default judgment. The likelihood of success on the merits is not the standard used to determine whether a defendant has a meritorious defense. *Id.* (citing *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980)). Rather, "if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Id.* (citing *Rooks v. American Brass Co.*, 263 F.2d 166, 168 (6th Cir. 1959)(per curiam).

In their complaint, which was filed with the bankruptcy court on October 7, 2003, the Durands assert they were to sole shareholders of CMG, which was video production company located in Cleveland, Bradley County, Tennessee. CMG also had a satellite video production facility located in Knoxville, Tennessee.

---

[1]This Court expresses no opinion as to whether or not the Durands will or may ultimately prevail on the claims in Counts II and V of their complaint.

The Durands assert that prior to July 2001, Americana approached them seeking to acquire CMG through a stock acquisition. As a result, the Durands alleged that on or about July 16, 2001, they entered into a Stock Purchase and Share Exchange Agreement ("the Acquisition Agreement") with Americana in which they sold all of their shares in CMG to Americana in exchange for 1,400,000 shares of Americana stock and various other promises of payment from Americana. The Durands further assert that as part of the Acquisition Agreement: (1) they continued to lease the premises used by CMG in Cleveland, Tennessee; (2) Americana promised to replace the Durands on several personal guarantees they had made for CMG's obligations and/or to obtain releases for the Durands on such personal obligations; and (3) Americana entered into an employment agreement with Mr. Durand in which Americana promised it would make a much needed infusion of capital into CMG.

The Durands also assert that Americana fraudulent and intentionally induced them to enter into the Acquisition Agreement by concealing its intention not to pay CMG's just debts. They further assert that Americana breached to acquisition agreement by willfully, intentionally and fraudulently depleting the assets of CMG rather than making the necessary capital infusions into CMG. The Durands also assert that Americana failed to replace them on the numerous guarantees they had made on behalf of CMG and that Americana failed to pay lease payments due to them for the lease of CMG's facilities.

On August 5, 2003, CMG filed a voluntary chapter 7 petition in the bankruptcy court. The Durands are creditors in the chapter 7 proceedings with claims of $1,500,000.00. They filed the instant complaint in the bankruptcy court seeking a determination that the debt of CMG to them is actually a proper debt of Americana.

In Count 1 of their complaint, the Durands seek a declaratory judgment that CMG is an alter-ego of Americana and, as a consequence, Americana is liable for the claims against CMG.  *Id.*  In Count 2 of their complaint, the Durands alleged that Americana used its control over its alter-ego, CMG, to fraudulently deplete the assets of CMG in derogation of the Durand's rights under the Acquisition Agreement and/or related agreements.  *Id.*

In Count 5 of their Complaint, the Durands allege that as part of the employment agreement between CMG and Americana, which was entered into in furtherance of the Acquisition Agreement, Americana: (1) agreed to pay the Durands approximately $207,000 for loans and expenses that the Durands had personally obligated themselves to pay on behalf of CMG; (2) that Americana agreed to pay Mr. Durand 250,000 shares of Americana Rule 144 voting stock; and (3) that Americana agreed to pay Mr. Durand 196,750 shares of Americana Rule 144 voting stock as a bonus for reaching certain sales goals with CMG.  The Durands allege that these sales goals were in fact met.  However, the Durands alleged that Americana has breached all three of the aforementioned contractual obligations.  *Id.*

A copy of the answer to the Durands' complaint, which Americana alleges was mailed to the bankruptcy court from Albuquerque, New Mexico, on January 8, 2004, is attached as Exhibit B to Americana's Motion to set aside the entry, or otherwise, vacate the bankruptcy court's entry of judgment [Court File No. 7, Exhibit B].  In its "proposed" answer to the Durands' complaint, Americana has raised two counterclaims as defenses to the claims raised by the Durands.

In its counterclaims, Americana admits that it entered into the Acquisition Agreement with the Durands on or about July 16, 2001. [Court File No. 7, Exhibit B].   Americana asserts that prior to the execution of the Acquisition Agreement, on June 4, 2001, it submitted a letter of intent to purchase CMG to Mr. Durand.   Americana asserts that the letter of intent

obligated the Durands and/or CMG to provide Americana, or its representatives, access to the "books, records, management, key personnel, auditors, attorneys, financial statements and properties of the company so that due diligence may be completed by [Americana] . . ." [Court File No. 7, Exhibit B, Counterclaim, ¶ 8].

According to Americana, one of the documents provided to Americana at a meeting in Albuquerque, New Mexico, with the Durands was a financial statement, prepared at Mr. Durand's direction, which valued the assets of CMG as being in excess of one million dollars. *Id.* at ¶ 9. Americana alleges that this financial statement was accompanied by an appraisal of CMG's equipment by an independent appraiser which also valued CMG's equipment as being in excess of one million dollars. *Id.* at ¶n 10.

Americana alleges that at the meeting in which the Durands provided the financial statement and independent appraisal to Americana, Mr. Durand had actual knowledge that the value of the equipment owned by CMG was less than five hundred thousand dollars and Mr. Durand also knew that the statements in the independent appraisal were highly inflated and misrepresented the true worth of CMG's equipment. ¶¶ 11, 12. Finally, Americana alleges that the Durands knew that Americana entered into the Acquisition Agreement in reliance upon the accuracy of the appraised value of CMG's equipment. *Id.* at 14.

In its countercomplaint, Americana asserts a claim of breach of contract of the Acquisition Agreement based upon the Durands' inclusion of inaccurate information in their financial statement. [Court File No. 7, Exhibit B, ¶¶ 18, 19]. Americana also asserts a claim of fraud, namely, it asserts it was damaged when it relied on the false misrepresentations made by the Durands as to the value of the equipment owned by CMG as grounds for entering into the Acquisition Agreement. *Id.*

Here, the counterclaims asserted by Americana in its "proposed" Answer to the Durands' complaint would be a meritorious defense to the Durands' claims. In particular, if Americana were fraudulently induced to enter into the Acquisition Agreement, and related agreements, with the Durands based upon misleading financial information, then the Acquisition Agreement would be voidable as having been induced by fraud and the Durands would not be entitled to damages from Americana for breach of any of those contracts.[2]

Thus, the Court finds that, subject to the discussion set forth in detail below, Americana has shown "good cause" for setting aside the entry of default by the bankruptcy court.

## IV. **Americana's Proposed Answer/Counterclaim**

In its motion to set aside, or otherwise vacate the bankruptcy court's entry of default [Court File No. 9], Americana asserts that it mailed its Answer to the Durands' complaint to the bankruptcy court in Albuquerque, New Mexico on January 8, 2004. Americana's counsel has attached his affidavit stating that he prepared, signed, packaged, and addressed Americana's answer on January 8, 2004, and, on that same day, delivered it to Americana's Office Administrator for mailing to the bankruptcy court consistent with Americana's internal office procedures. [Court File No. 9, Exhibit C]. Neither of the two affidavits submitted by Americana states, however, that any Americana employee has personal knowledge of seeing the letter containing the Answer/Counterclaims actually being mailed to the bankruptcy court.

Furthermore, although Americana's counsel states that he mailed the Answer to the bankruptcy court, he admits that the bankruptcy court never actually received the document. In its motion to vacate, or otherwise set aside, the bankruptcy court's entry of default, Americana states:

---

[2]The Court expresses no opinion as to the merits of Americana's counterclaims.

> 6. Defendant's counsel of record incorrectly, through no fault or action of the Defendant individually, Americana Publishing, Inc., assumed the Motion, and in the alternative, answer of the Defendant would or had voided the need for and scheduling of a default hearing.

[Court File No. 9].

Under the common law there has long been a presumption that an item properly mailed was received by the addressee. *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985)(citing *Hagner v. United States*, 285 U.S. 427, 52 S. Ct. 417, 76 L.Ed. 861 (1932)). The presumption will arise when proof is presented "that the item was properly addressed, had sufficient postage, and was deposited in the mail." *Id.* (citing *Simpson v. Jefferson Standard Life Insurance Co.*, 465 F.2d 1320, 1323 (6th Cir. 1972)). In this instance, the two affidavits submitted with Americana's motion to vacate, or otherwise set aside, the bankruptcy court's entry of default do not give rise to such a presumption, because neither affidavit provides proof that Americana's Answer to the Durands' complaint was actually deposited in the mail.

Further, there is no proof that the bankruptcy court actually received the answer. Under Federal Rule of Civil Procedure 5(e):

> "Filing with the court" is defined as filing with the clerk of the court, or, if the judge permits, with the judge. Fed. R. Civ. P. 5(e). If mailed, the filing is accomplished only when actually received by the clerk or when placed in the clerk's post office box. *Lee v. Dallas County Board of Education*, 578 F.2d 1177, 1178, 1179 (5th Cir. 1978).

*Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986). See also *McIntosh v. Antonino*, 71 F.3d 29, 36 (1st Cir. 1995)("When papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of them.").

Thus, only an unsigned copy of Americana's answer to the Durands' complaint appears in the record as an attachment to Americana's motion to vacate. [Court File No. 9]. The Court has treated this copy of Americana's answer as a "proposed" copy of Americana's answer. However, Americana has not, as of yet, complied with Fed. R. Civ. P. 5(e) by filing a signed copy of its answer and counterclaims either with this court or the bankruptcy court.

Further, the Court notes that while Americana's counsel should have been much more diligent in determining whether or not its answer had actually been received by the bankruptcy court, this Court will not deprive Americana of its day in court based upon an assessment of its counsel's performance. See *Shepard Claims Service, Inc. v. William Darrah & Associates,* 796 F.2d 190, 195 (6th Cir. 1996)(A default judgment deprives the client of its day in court and should not be used as a vehicle to discipline the client's attorney).

Further given the Sixth Circuit's strong preference for trial on the merits as opposed to a default judgment, *Weiss,* 283 F.2d at 795, as well as the fact that Americana's "proposed" answer and counterclaim discloses a potentially meritorious defense, Americana shall have until **Friday, August 27, 2004**, in which to file a signed copy of its Answer and Counterclaims with this Court.

Should Americana file a copy of its Answer/Counterclaims with this Court on or before Friday, August 27, 2004, then Americana's motion to vacate, or otherwise set aside, the bankruptcy court's entry of judgment [Court File No. 9] will be **GRANTED**. However, notice is hereby given to Americana that should Americana fail to timely file its Answer/Counterclaims in this Court on or before August 27, 2004, then:

(1) Americana's motion to vacate, or otherwise set aside, the bankruptcy court's entry of judgment [Court File No. 9] will be **DENIED**; and

(2) This Court will **ACCEPT** the Proposed Findings of Fact and Conclusions of Law of the Bankruptcy Court [Court File No. 2] and a **DEFAULT JUDGMENT** in favor of the Durands will be entered with regard to the claims in Counts 2 and 5 of their complaint.

A separate order will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE